

**Langone & Associates, PLLC**
ATTORNEYS AT LAW

*Richard M. Langone*
MA JD LLM

*Patrice Langone*
Paralegal

MEMO ENDORSED
The sentencing is adjourned to August 18, 2020 at 4:00 p.m.  Defendant's submission is due July 30, 2020.  The Government's submission is due August 6, 2020.

SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge
May 8, 2020

*TEL: 516.795.2400*
*FAX: 516.795.2425*
*www.rlangone.com*

*Peter J. Tomao*
Of Counsel

*Daniel J. Costello*
Of Counsel

May 7, 2020

<u>Service via ECF & Fax: 212-805-7986</u>
Hon. Paul D. Gardephe, District Court Judge
United States Courthouse – SDNY (NYC)

    Re: *United States v. Adel Kellel* (Dkt. 20-CR-0067) (PGG)
       REQUEST FOR CONTINUANCE OF SENTENCING

Dear Judge Gardephe:

    I represent the defendant in the above-referenced matter. I am writing to make two requests of the Court:

- First, enlarge the time the defense has to submit a Defendant's Sentencing Memorandum until the end of July; and,

- Second, postpone the sentencing until the end of summer to see how far COVID-19 has spread in the federal prison system by then.

    Mr. Kellel has pled guilty to income tax evasion and is awaiting sentencing which is currently scheduled for June 29, 2020 at 4:00 P.M. He is a first offender with a sentencing guidelines range of 24-30 months (Level 17, CHS I). The completed PSR states that Pretrial Services has reported that his behavior while out on bond has been "perfect." *See* PSR ¶ 5. And Probation opines that a below guidelines sentence would not be unreasonable, i.e., "A sentence within the applicable guideline range may be greater than necessary to comply with the sentencing purposes set forth in 18 U.S.C. § 3553(a)(2)." *Id.* ¶ 97.

    <u>Enlargement of Time to Submit Defendant's Sentencing Memorandum</u>

    Defendant's PSR is due today. However, Mr. Kellel has been in Egypt since March. He was there visiting his family when COVID-19 attacked the world, and airports in the U.S. and all around the world were ordered closed. Egypt is first opening up air travel back to the U.S. on June 1st; Mr. Kellel has an airline ticket on the first flight back to the U.S. (that same day, i.e., June 1). Pretrial Service is aware of

the situation; and I have (thankfully) heard no complaints from the government. *See* Exhibit A. (Confirmation of Airline tickets attached).

Because Mr. Kellel cannot leave Egypt until June 1st, I have been unable to sit down and speak with him at length to gather the information necessary to prepare a meaningful Defendant's Sentencing Memorandum. I am also unable to investigate or attempt to physically gather documents or information due to the nationwide lockdown that is not scheduled to ease in the downstate area for another couple of weeks. For example, we questioned the veracity of a government informant, Tetyana Mykhaylyuk, and recently learned that in 2017, she owed the IRS $20,709 we which believe represented winnings from gambling at Atlantic City. *See* Exhibit B. She is a witness who falsely represented herself as Mr. Kellel's "longtime manager" – and that used false attribution as the basis for her purported knowledge as to how much "cash" followed through the business each week. The government has acknowledged (in the Addendum to the PSR) that Tetyana's representation was false. Unfortunately, due to the current situation, I have been unable to investigate or learn anything more about this critical witness – whose veracity the defense contests.

Accordingly, I respectfully request that the defendant's time in which to submit his Defendant's Sentencing Memorandum be enlarged to July 30, 2020, to give me adequate time to investigate and prepare the Defendant's PSR after Mr. Kellel arrives home. I am asking for an enlargement until July because it is still unclear when the courts and county clerk's offices will reopen, access to which is vital for the defense to properly investigate the background of the government's informants.

Postponement of Sentencing Until the End of Summer

This Court is (no doubt) aware that the COVIC-19 virus has been spreading in federal and state correctional institutions across the nation. "Prisons are petri dishes for contagious respiratory illnesses."[1] Internationally, prisons have proven ripe for the rapid spread of COVID-19. In China, officials confirmed 500 cases of coronavirus in prisons.[2] Courts across Iran have granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country.[3] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that

---

[1] *Letters to the Editor: A prison doctor's stark warning on coronavirus, jails and prisons*, Los Angeles Times (Mar. 20, 2020), at https://www.latimes.com/california/story/2020-03-20/prison-doctors-stark-warning-on-coronavirus-and-incarceration. *See also* Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, at https://doi.org/10.1086/521910

[2] Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials*, Business Insider (Feb. 21, 2020), at https://bit.ly/2vSzSRT

[3] Claudia Lauer and Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, The Associated Press (Mar. 7, 2020), https://apnews.com/af98b0a38aaabedbcb059092db356697

COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency."[4]

Mr. Kellel is 63 years old, which places him in a delicate category for morbidity, since COVIC-19 is especially onerous on the elderly. He also suffers from high cholesterol, a factor associated with heart disease, another risk for morbidity in the event of virus exposure. These factors militate in favor of taking extraordinary precautions to prevent Mr. Kellel from acquiring COVID-19. Very little is still known about this virus, other than the fact that its outcome on the afflicted is utterly unpredictable and varies from mild to extreme – from no symptoms to death within days of acquiring the virus.

Thus far, the general inmate population has not been tested for COVID-19; rather, testing is performed if, and only if, an inmate becomes symptomatic. But according to CDC and Dr. Fauci, asymptomatic carriers are repent and present the greatest danger of spread; and prisons are believed to house many carriers of the virus. *See,* Ex. C (Aff. Dr. Jonathan Giftos [March 30, 2020]); *see also, Judge Rejects Feds' Bid to Quash Report on Brooklyn Federal Lockup*, NYLJ Article (May 2, 2020). *See* Exhibit D.

Dr. Jonathan Giftos, a clinical professor at the Albert Einstein College of Medicine, and many other medical professionals, have opined that the New York federal detention centers are ill-equipped to prevent the spread of the Corona virus and ensure the safety of inmates detained at those facilities – and presumably other, similarly situated federal correctional institutions. Giftos and others have called for the release of all inmates at higher risk of morbidity whose release would pose no significant risk of flight or threaten the welfare and safety of the community. *See* Ex. B; *accord, A Storm Is Coming: Fears of an Inmate Epidemic as the Virus Spreads in the Jails*, The New York Times (Mar. 21, 2020), at https://www.nytimes.com/2020/03/20/nyregion/nyc-coronavirus-rikers-island.html.

Accordingly, federal district court judges in both the EDNY and the SDNY have been adjourning sentences and/or granting home confinement to first-offenders convicted of non-violent crimes who do not present a significant risk or flight or significant danger to the safety of the community. Mr. Kellel falls within the acceptable release criteria.

A few examples: On March 12, 2020, in *United States v. Raihan*, 20-CR-68 (BMC), Magistrate Orenstein, concerned about asymptomatic transmission, released the defendant to home confinement, holding that increasing the population of the Metropolitan Detention Center could present a "danger to the community"—the staff and inmates inside the jail—by potentially bringing the virus into the facility. *United States v. Raihan*, 20-CR-68 (BMC) (Mar. 12, 2020). A week later, conditions worsened exponentially.

On March 19, 2020, in *United States v. Stephens*, 15-CR-95 (AJN) (Mar. 19, 2020), Judge Nathan ordered the defendant released (just thirteen days after having remanded

---

[4] Jennifer Hansler and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran amid coronavirus outbreak*, CNN (Mar. 10, 2020), at https://cnn.it/2W4OpV7.

3

him), "in light of circumstances that have changed since the March 6 hearing," namely, "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic.". In setting bail, Judge Nathan noted that "[a] comprehensive view of the danger the Defendant poses to the community requires considering all factors," including COVID-19. *Id.*

And on March 19, 2020, the threat of coronavirus led Judge Ramos to release a formerly detained individual on bail. *See United States v. Santiago Ramos*, 20-CR-04 (ER).

For an extended discussion and catalogue of the numerous cases in which federal courts have wrestled with the issue of release inmates from confinement (pre and post plea) during this pandemic, *see:* https://www.dropbox.com/sh/ei4h91nrayjmbbb/AAD5005ruOdt3nyNGjhd_CyBa?dl=0 (collecting cases).[5]

The physical safety of the defendant must be a critical consideration when sentencing a non-violent first offender to a period of incarceration. At this point we do not know how COVID-19 may spread throughout the federal correctional system. Given the *relatively* minor nature of this federal offense (without for an instant minimizing its significance), it is respectfully submitted that caution counsels to wait and see.

Therefore, we urge this Court in the interest of justice – and for the well-being of Mr. Kellel – to postpone the sentencing until the end of summer (August-September) to

---

[5] Indeed, on April 6, 2020, Attorney General William Barr issued new guidelines on how United States Attorneys should handle bond applications in light of COVID-19; specifically, in addition to the criteria set forth in the Bail Reform Act ("BRA"), AUSAs should,

> consider the medical risks associated with individuals being remanded into federal custody during the COVID-19 pandemic. Even with the extensive precautions we are currently taking, each time a new person is added to a jail, it presents at least some risk to the personnel who operate that facility and to the people incarcerated therein. It also presents risk to the individual being remanded into custody—risk that is particularly acute for individuals who are vulnerable to a serious infection under the Centers for Disease Control and Prevention ("CDC") Guidelines. We have an obligation to minimize these risks to the extent possible while remaining faithful to the BRA's text and discharging our overriding obligation to protect the public. That means you should consider not seeking detention to the same degree we would under normal circumstances—specifically, for those defendants who have not committed serious crimes and who present little risk of flight (but no threat to the public) and who are clearly vulnerable to COVID-19 under CDC Guidelines. In this analysis, the risk of flight and seriousness of the offense must be weighed against the defendant's vulnerability to COVID-19. Accordingly, we should continue to seek detention for defendants who are charged with serious crimes and who pose a substantial risk of flight, or for defendants who would normally warrant detention under the BRA and who are not vulnerable to COVID-19 under CDC Guidelines. *See* Exhibit E.

see if it would be safe – *at that time* – to sentence Mr. Kellel to a term of incarceration; or, alternatively, to home confinement, and/or to such other terms and conditions the Court deems just and proper.

                                      Respectfully yours,

                                      */s/ Richard M. Langone*
                                      RICHARD M. LANGONE
                                      rich@rlangone.com
                                      516.795.2400

Cc:    AUSA JORGE ALMONE
        AUSA OLGA
        (Service by ECF and by e-mail)