# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

v.

**ADEL KELLEL**

Movant

**MEMO ENDORSED:**
The Government will respond to the Defendant's motion for compassionate release by **January 14, 2022**. The Government's response will address whether the Defendant has received a COVID-19 vaccine.

SO ORDERED.

*/s/ Paul G. Gardephe/*

Paul G. Gardephe
United States District Judge
Dated: January 3, 2022

Case number: 1:20-CR-67-01 (PGG)

## MOTION FOR IMMEDIATE RELEASE

Movant, comes Pro-Se, and moves the court for immediate release on the basis of the First step Act of 2018, Pub. L, 115-391, 132 Stat. 5194 (2018) (Compassionate Release), also supported by the implementation of

1

the CARES Act which has not been favorably recognized by the BOP, especially at the FCI Fort Dix Facility, and related memorandums issued by Attorney General William Barr initially urging the release of certain federal inmates who are most vulnerable to contract COVID-19, and later followed with specific clarifications and addendums. This motion should be construed as relief being sought under 18 U.S.C. § 3582 (c) (compassionate release) and not as a motion seeking relief under the CARES Act.

This motion is submitted pursuant to a 30 day non-response from the warden at FCI Ft. Dix to a Compassionate Release request submitted by the movant on October 8, 2021.  **See attachment A.**

### *Introduction*

Movant moves the Court for an order granting the described relief as he is in a prison environment that is conducive to tightly quartered social interaction and he is part of the group of Americans who are at high risk contracting and suffering serious complications from COVID-19.  The court has already found that the spread of the novel coronavirus, more specifically COVID-19, has presented extraordinary and unprecedented challenge for the nation and poses a serious issue for prisons due to the infectious nature of preexisting asthma and out of range blood lipid data when exposed to COVID-19 and/or its variants.  It is well established that the Risk of Death from a worldwide pandemic is an extraordinary and compelling reason to grant compassionate release.

Adel Kellel, who is a 64 year old non-violent, convicted federal inmate currently detained at the Ft. Dix Federal Correctional Institution, otherwise known as FCI Ft. Dix, is among the group of people the Centers of Disease Control and Prevention (CDC) has categorized as most-at-risk for

2

contracting COVID-19, a dangerous illness spreading rapidly across the world and through every state and city in the United States and has, to date, has infected 46.9 million and caused the death of at least 761,000 Americans. Furthermore, this pandemic and associated multiple variants are once again making a formidable presence throughout the country and are significantly affecting the Federal Prison System facilities.

The Movant was sentenced on November 30, 2020, to serve a term of 24 months for Tax Evasion. His projected release date from BOP custody is March 13, 2023.

On Thursday, March 27, 2020, U.S. Attorney General William Barr directed the Bureau of Prisons to increase the use of home confinement among older inmates and those with underlying medical conditions as a means to mitigate the spread of COVID-19 within the country's prison system. As of November 13, 2023, 42,604 inmates and 8625 staff members have tested positive for COVID-19 in federal facilities. Two hundred sixty-six federal inmates and seven staff members have died as a result of the virus. Attorney General Barr stated in a virtual press conference: "There are particular concerns in this institutional setting. We want to make sure that our institutions don't become Petri dishes and it spreads rapidly through a particular institution. We have the protocols that are designed to stop that, and we are using all the tools we have to protect the inmates." In his memorandum to BOP Director Michael Carvajal, Barr explained that the assessment of federal inmates is necessary given the current pandemic. He further stated: "Many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care. But for some inmates, home confinement might be more effective in protecting their health." In this way, the Attorney General has asked the BOP to consider a range of discretionary factors when determining which inmates should qualify for home confinement. While the guidelines are discretionary, key considerations mentioned during his virtual press conference included (1) the age and vulnerability of the inmate to COVID-

3

19; (2) the inmate's conduct while in prison; (3) and whether the inmate poses danger to the community based on his or her crime.

Based on the government and CDC reports, the health risk to Mr. Kellel is heightened because he is part of the group considered most vulnerable to COVID-19. Moreover, if he is to contract the Coronavirus, as a man that is afflicted with High Blood Pressure and High Cholesterol he is at risk for more serious complications. Added together, movant is at risk every day. By their very nature, federal correctional facilities and indeed any detention facility, are hotbeds for the spread of infectious diseases especially those as contagious as COVID-19 and its related Delta Variant. In this way, due to his age and pre-existing medical problems, Mr. Kellel's life is at risk. Moreover, based on Attorney General Barr's memorandum and conference, Mr. Kellel is one of the inmates who should qualify for early release based on these factors. Mr. Kellel, therefore, respectfully requests that he be granted an order for his immediate release along any form of monitoring deemed appropriate by the supervising authorities.

### *Movant Begs the Court to Grant him Compassionate Release and Reduce His Sentence to Time Served*

In 2018, the First Step Act modified the compassionate release statute to end the BOP's gatekeeping function and to allow inmates to directly file compassionate release motions in certain circumstances. See 18 U.S.C. § 3582 (c)(1)(A)(i). Under the First Step Act, the Court may grant an inmate's motion for a sentencing reduction if three requirements have been satisfied. First, the Court must determine either that (a) the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or that (b) 30 days have elapsed since the receipt of such a request by the warden or the defendant's facility. Second, the Court must determine that

4

"extraordinary and compelling reasons warrant a reduction....and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582 (c)(1)(A)(i). Third, the Court may reduce a defendant's sentence after determining that the reduction is consistent with the sentencing factors outlined in 18 U.S.C. § 3553(a).

A. Mr. Kellel has satisfied the exhaustion requirement because 30 days have passed since he first submitted a request for compassionate release to the warden at FCI Ft. Dix.

B. Mr. Kellel is eligible for compassionate release because his heightened vulnerability of COVID-19 is an extraordinary and compelling circumstance that weighs in favor of immediate release. The First Step Act empowers this Court to make an independent determination as to whether there are extraordinary and compelling reasons for compassionate release. The Court is no longer required to defer to the BOP's determination of whether such circumstances exist. Rather than deferring to the BOP, the First Step Act directed courts to consider whether releasing Mr. Kellel will not only potentially save his life but will also protect the inmates and staff at FCI Ft. Dix, as well as the broader community. Furthermore, this Pro Se Motion is specifically made upon "extraordinary and compelling" reasons, as set forth in the First Step Act, (FSA) of 2018 which permits a prisoner's sentence to be reduced based upon demonstrated rehabilitation which show that the movant is not a threat to the community. When a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in the United States Sentencing Guidelines §1B1.13. See United States V. Booker, 976 F.3d 229 (2d cir. 2020).

### *Factual Background*

As of November 13, 2021, the new strain of coronavirus which causes COVID-19, or the Delta Variant, has infected nearly 253 million people, leading to at least 5.09 million deaths worldwide. On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic.

Currently, the community of Ft. Dix, New Jersey, and all surrounding counties are experiencing a COVID-19 outbreak via community transmission. An outbreak is where a large number of people suddenly become ill. Due to the State of Emergency declared area wide, public health officials recommended community actions to reduce people's risk of being exposed to COVID-19, particularly, the Centers for Disease Control and the United States federal government has recommended social distancing. The governor of New Jersey had to declare a stay at home order along with various other restrictions and is currently revisiting these orders due to a recent rise in confirmed cases.

The CDC has issued guidance that individuals at higher risk of contracting COVID-19 such as those people with chronic medical conditions, take immediate preventative actions, including avoiding crowded areas and staying home as much as possible. These criteria address the exact profile and situation of Mr. Kellel. With thousands of confirmed cases in the Ft. Dix area that indicate community spread, every necessary action must be taken to protect vulnerable populations and the community at large.

### *Release Plan & Requirements*

A major component of the release from incarceration protocol is establishment of an approved re-entry plan. Mr. Kellel has an appropriate re-entry plan that will make transition from prison to home confinement a relatively seamless step. The following components of his BOP re-entry plan are:

- ✓ He will be released to live with his wife and son.
- ✓ The location meets the requirements of the U.S. Probation Department
- ✓ The required telephone connection for probation monitoring will be installed
- ✓ Health insurance will be provided through Medicare as soon as possible.
- ✓ He will obtain employment through friends and associates who have always supported him.

The second major consideration of release is directly related to the inmate's rating as a security risk and his likelihood of returning to prison after release. In these measurements, Mr. Kellel has been evaluated to have a "minimum" community risk and a "minimum" likelihood of committing another crime resulting in a return to prison.

### *Conditions of Confinement and Spread of Coronavirus*

Conditions of pretrial confinement create the ideal environment for the transmission of contagious disease. Inmates cycle in and out of federal detention facilities from all over the country, and people who work in the facilities, including correctional officers, and care service providers leave and return daily, without consistent screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in prison facilities. Many people who are incarcerated also have chronic conditions, such as diabetes or HIV, which makes them vulnerable to severe forms of COVID-19. According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," "infection control is challenging in these settings." Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with

7

high numbers of cases.  In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons.  Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "reports that COVID-19 has spread to Iranian prisons," noting that "their detention amid increasingly deteriorating conditions defies basic human decency.  Courts across Iran have granted in excess of 54,000 inmate furloughs as part of the measures to contain coronavirus across the country.  In the U.S. steps have already been taken in some jurisdictions to facilitate release of elderly and sick prisoners and to reduce jail populations by discouraging the refusing of admission of individuals arrested on non-violent misdemeanor charges.  Additionally, given the recent conference and memorandum issued by Attorney General Barr, ***it is evident that the United States government is willing to reduce the inmate population by releasing those who are most at risk.***

### *Specific Vulnerability Factors of Mr. Kellel*

Mr. Kellel has a long-established history of suffering from various medical challenges.  These include high blood pressure and high cholesterol levels that pose significant health issues. The breathing conditions he encounters create a high degree of susceptibility to contraction of COVID-19 and the Delta Variant as respiratory issues are extremely vulnerable to COVID related infection.

### *Conclusion*

Mr. Kellel is undoubtedly among the highly vulnerable population and is at maximum risk of contracting COVID-19 or the Delta Variant given that he suffers from significant medical and health related issues that are specifically associated with COVID-19 risk and the variants that are now prevalent in New Jersey and throughout our country.  His prison housing

conditions consist of a 204 person dormitory, along with communal showers, rest rooms, communal computer and phone usage, thus prohibiting social distance protocol. Food is prepared and served by fellow inmates. Furthermore, Mr. Kellel, as evaluated via the official Federal Bureau of Prisons adopted risk instrument, poses a minimum public risk and carries a minimum rating relative to likelihood of recidivism.

During his incarceration thus far, Mr. Kellel has demonstrated a high level of integrity and responsibility in carrying out his obligations as a prison inmate. He has provided valuable, immeasurable service and respect to his fellow inmates, as well as to institutional staff. His work evaluations are excellent, and he has had no disciplinary infractions since his arrival to Ft. Dix.

Furthermore, he has successfully completed as many self-improvement and educational programs as offerings have allowed. However, these have been limited due to COVID related restrictions.

Lastly, his presence is desperately needed at home as he has a wife and son that depend on his support and guidance, as well as his financial support to the family. Movant and his wife are also responsible for the care of movant's mother. There currently is tremendous burden on his wife who alone is trying to provide all the needed support.

Movant also asks the Court to apply the following: "where a document filed 'Pro Se'.....be liberally construed" (United States v. Seliner, 773 F. 3d 927, 8th Circuit 2014) and that motion be "held to a less stringent standard than formal pleadings "by a lawyer."

With the above facts in place, Mr. Kellel begs the court to grant immediate modification of sentence pursuant to U.S.C. §3582 as a result of the COVID-19 Pandemic that currently exists in our country and specifically, in the Ft. Dix, New Jersey area, along with any form of monitoring deemed necessary by supervising officials. Movant urges the Court to refer to the

recent similar case U.S.A. v Jeffrey Stamps (see references) as it contemplates this motion.

Respectfully submitted,

_____

Adel Kellel

Register 87677-054

FCI Ft. Dix – Satellite Camp

PO Box 2000

Joint Base MDL, NJ  08640

11/22/2022
_____

Date

***References and Resources***

United States vs. Jeffrey Stamps 18-00579-5  Lexis 9243

Eastern District of Philadelphia

United States v. Feucht, case n. 11-CR-60025, docket no.53 (S.D. Fla May 28, 2020) Granting compassionate release despite no confirmed cases at FCI Jessup because "[Z]ero confirmed cases is not the same thing as zero Covid-19 cases" (citation omitted)

Note:  A number of district courts have concluded that guideline 1b1.13 cmt n. 1 does not restrain a courts assessment of whether extraordinary and compelling reasons exist to release a defendant:

> *United States V. Booker, 976 F.3d 229 (2d cir. 2020)*
>
> *United States v. Cantu, no. 1:05-CR-458, 2019 wl 2498923 (S.D. Tex June 17,2019)*
>
> *United States v. Brown, No. CR05-00227, 2019 wl 4942051 at \*4 (S.D Iowa, Oct 8, 2019)*
>
> *United States v. Fox, no.. CR-14-03, 2019 wl 3046086 at \*3 (D. ME July 11, 2019)*

A defendant has dignity.  Adding COVID-19 to the incarceration of an inmate is a condition the court could not foresee.  This pandemic cannot be just another downside of prison one is subjected to when breaking the law. No person deserves such callousness:

11

*United States v Starr, no. 4206-CR-00080 (S.D. IA, May 8, 2020)*

"A document filed pro se is 'to be liberally construed.' " Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

United States v Atkinson, No. 2:19-CR-55 JCM (CWH), 2020 WL 1904585, *2-4 (D.Nev. Apr 17, 2020) Granting compassionate release to defendant Atkinson, notwithstanding that FCI Atwater where he was housed had seen no cases of COVID-19 because the realities of prison life make it impossible for medically vulnerable inmates like Mr. Atkinson to follow CDC guidelines to protect themselves in the face of COVID-19.

United States v Kennedy, 18-CR-20315 (JEL) (Mar 27, 2020. E.D Mich) Judge Levey ordered the defendant's release, nothing that "waiting for either defendant to have a confirmed case of COVID-19 or for there to be a major outbreak in defendants facility, would render meaningless this request for release. Such a failure to act would have devastating consequences for defendant and would create serious medical and security challenges to the existing prison population and wider community.

United States vs. Wise, No. CR ELH-18-72, 2020 WL 2614816, at *7 (D. MD. May 22, 2020) ("[J]ust last week, the department of justice adopted the position that any inmate who suffers from the chronic conditions associated with severe illness from COVID-19 are eligible for compassionate release.")

United States v. Wright, no CR TDC-17-0388, 2020 WL 2571198, at *3 (D. MD. May 21, 2020) (" The government now agrees, based on recent department of justice guidance, that Wright's diabetes condition, and perhaps other medical conditions she presently has, could constitute "extraordinary and compelling reasons" under the circumstances of the COVID-19 pandemic.")


United States v Millan, 2020 U.S. District Court Lexis 59955 (S.D.N.Y. April 6, 2020) Judge Loretta A. Preska cited a host of reasons that were "extraordinary and compelling" to grant compassionate release.  This included her statement that Millan was "unconditionally rehabilitated" after successfully completing dozens of BOP programs, was remorseful, was a model inmate, was a leader of the religious community in prison, and worked with at-risk youth.

# Attachment A

Before completing this sheet, please review Program Statement 5050.50, Compassionate Release/Reduction In Sentence, available in the law library.

## COMPASSIONATE RELEASE/REDUCTION IN SENTENCE

NAME: Adel Kellel   UNIT: B   REG#: 87677-054   DATE: 10/8/21

Who is your Physician (circle): <u>Patel</u>   Sceusa   Sood   Chinwalla   UNKNOWN

Choose One Criteria: You can only apply under <u>one</u> criteria.

---

**Extraordinary/Compelling Circumstances:**

**X** Medical Circumstances

　　____ Terminal Medical Condition- Terminal Diagnosis with 18 months or less life expectancy.

　　**X** ~~Debilitated Medical Condition~~ Detached Retina – Illness that has you partially (50%) or completely (100%) disabled.

____ Elderly Inmates

　　____ "New Law" Elderly Inmates – 70 years old or older, and served 30 years or more of sentence.

　　____ Elderly with Medical Conditions -- 65 years old or older and served at least 50% of sentence.

　　____ Other Elderly Inmate- 65 years or older and served at least 75% of sentence or the greater of 10 years.

____ Death or Incapacitation of the Family Member Caregiver of an inmate's dependent child- provide verifiable documentation the child is "suddenly" without a caretaker, the family member is in an incapacitated state and unable to care for the child.

____ Incapacitation of a Spouse or Partner – provide verifiable medical documentation of incapacitated state.

---

To be completed by inmate:

**Briefly describe your medical condition or non-medical circumstance:**
Detached Retna 50% Hypertension, Hyperlipedemia, Obesity (BMI = 28) and Suffered a Stroke March 2020

**If you have applied before, has anything changed in your medical condition since your last application (if so, describe):**
_____

**Proposed Release Plan (Must have ALL of the following):**

Name and contact information of who you will live with, and the last time you spoke to this person about your release plan:
Elizabeth Sierra

Address of where you will be living: 72 Windsor Gate Dr. New Hyde Park, NY 11040
Where will you receive medical treatment (if applicable): Private Physicians
How will you pay for your medical treatment (if applicable): Blue Cross / Blue Shield
Additional Comments:
I will be 65 yrs old March 2022

Adel Kellel
Registry 87677054
FCI FT DIX - Satellite Camp.
PO Box 2000
Joint Base MDL N.J. 08640

USM-83 SDNY

RECEIVED
CLERK'S OFFICE
SDNY

Daniel Patrick Moynihan U.S. Court house
Ruby Kvagick clerk of. court
500 Pearl Street
New York N.Y 10007

Crim. JKR



Trenton PROC NJ 086
TUE 23 NOV 2021 PM